**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **CAMERON BRACH,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-978** |
| | ) | |
| **CONFLICT KINETICS** | ) | |
| **CORPORATION,** *et al.*, | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This dispute arises from plaintiff's brief employment with a defense contractor, during which plaintiff claims he discovered that his employer had been improperly billing the federal government for services that had not yet been delivered or provided. Plaintiff alleges that he reported his findings to his superiors and was fired as a result. Plaintiff subsequently pursued, unsuccessfully, an administrative Complaint of Reprisal with the Department of Defense, and then filed the first iteration of his complaint in this case, alleging retaliation, reprisal, improper denial of employment benefits, and wrongful denial of overtime pay. Shortly thereafter, the defense contractor's chief executive officer sent plaintiff several text messages that, in plaintiff's view, were designed to discourage plaintiff from pursuing his claims in this case. Plaintiff then added in his Second Amended Complaint ("SAC") two retaliation claims based on these text messages.

Defendants filed a timely Rule 12(b)(6) motion to dismiss five of the six counts alleged in plaintiff's SAC. Specifically, at issue are the following questions:

(i) Whether a supervisor, sued in his individual capacity, may be held liable either for retaliation under the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), or for reprisal under the Defense Contractor Whistleblower Protection Act ("DCWPA"), 10 U.S.C § 2409;

1

(ii) Whether a plaintiff states a claim for wrongful denial of employment benefits and retaliation under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a) & 1140, if the complaint fails to allege the existence of a benefit plan to which ERISA may apply; and

(iii) Whether text messages, sent by a plaintiff's former supervisor and threatening a countersuit, are actionable as retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215.

A hearing on defendants' motion to dismiss was held, and two Orders subsequently issued, granting the motion in part and denying it in part. *See Brach v. Conflict Kinetics Corporation*, No. 1:16-cv-978 (E.D. Va. Nov. 18, 2016) (Doc 23); *id.* (E.D. Va. Nov. 21, 2016) (Doc. 24). This Memorandum Opinion further records the grounds for those rulings.

## I.

### A.[1]

Plaintiff, Cameron Brach ("Brach"), is a Virginia resident and military veteran with over eighteen years of experience as an operations director. From September 29, 2014 to August 9, 2015, Brach worked for defendant, Conflict Kinetics Corporation ("CKC"), a Virginia corporation that sells electronic firearms training devices and services to the United States military. Brach's supervisors included the two remaining defendants: (i) Brian Stanley ("Stanley"), a Virginia resident and CKC's chief executive officer, and (ii) Kathy Henderson ("Henderson"), a Virginia resident and CKC's Controller.

During his employment, Brach allegedly worked several overtime shifts without receiving overtime pay and was denied unspecified employment benefits. Moreover, in May

---

[1] The facts recited here are derived from plaintiff's SAC, which facts must be accepted as true at the Rule 12(b)(6) stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a "court must accept as true all of the allegations contained in a complaint"). The two text messages, attached as Exhibits 1 and 2 to the SAC, are also properly considered. *See* Rule 10(c), Fed. R. Civ. P. ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

2015, Brach allegedly discovered that CKC was improperly billing the United States Navy for services not rendered. Specifically, Brach contends that he conducted an invoice audit for CKC's contracts, which showed (i) that CKC had billed the Navy $16,460 for pistols that CKC never delivered; and (ii) that CKC had billed the Navy roughly $400,000 relating to installation services that CKC had not yet performed.[2] That same month, May 2015, Brach allegedly reported his findings to CKC executives both via email and in person. According to the SAC, CKC did not rectify the alleged overbilling, and instead, on August 9, 2015, terminated Brach's employment.

On December 11, 2015, Brach filed an administrative Complaint of Reprisal with the Inspector General's Office at the Department of Defense. In a letter dated June 30, 2016, the Inspector General informed Brach that the Department of Defense had closed its investigation, effectively exhausting Brach's administrative remedies. On July 28, 2016, Brach filed the first iteration of the SAC.

Thereafter, on August 7, 2016, Stanley sent Brach a text message stating:

> C- I want to go on the record that I don't want to enter into a lawsuit war with you. I've done the math up and down and no matter who wins…. Only the lawyers actually win. If you win you'll eat it all up in the counter lawsuits. If I win all my proceeds will go to the lawyers and you won't be able to pay them anyway. I just want to be clear. I don't want to be involved in this.

SAC Ex. 1. Ten days later, on August 17, 2016, Stanley sent Brach two more text messages:

- o "Warm up your savings for the counter suit. Don't run out"; and

---

[2] The SAC is unclear on the exact amount CKC allegedly charged for services not then performed. Indeed, plaintiff offers three different figures in three consecutive paragraphs. *See* SAC ¶ 53 (alleging overbilling of "over $300,000 worth of services . . . not yet performed"); *id.* ¶ 54 (alleging that "[s]pecifically, CKC billed . . . $409,274" for "services not yet performed"); *id.* ¶ 55 (detailing the individual charges, which total $379,273).

> o   "I know your ego is crazy out of control but did you walk this through with Mandy? It's a gnarly gamble. No upside with a downside potential of loosing [sic] 100,000.00."

*Id.* Ex. 2.

On August 23, 2016, Brach filed his first amended complaint, and thereafter, on October 11, 2016, Brach obtained leave to file the SAC, alleging six counts against CKC, Stanley, and Henderson:

(I)   Retaliation in violation of the FCA, 31 U.S.C. § 3730(h), arising from Brach's termination after Brach allegedly discovered CKC's improper billing;

(II)  Reprisal in violation of the DCWPA, 10 U.S.C § 2409,[3] also arising from Brach's termination;

(III) Wrongful denial of employment benefits in violation of ERISA, 29 U.S.C. § 1132(a);

(IV)  Wrongful denial of overtime pay in violation of the FLSA, 29 U.S.C. § 207(a)(1);

(V)   Retaliation in violation of the FLSA, 29 U.S.C. § 215, arising from Stanley's text messages; and

(VI)  Retaliation in violation of ERISA, 29 U.S.C. § 1140, also based on the text messages.

Defendants, pursuant to Rule 12(b)(6), Fed. R. Civ. P., jointly moved to dismiss Counts I, II, III, V, and VI. With respect to Counts I and II, defendants argue that Brach's FCA and DCWPA claims fail against defendants Stanley and Henderson because a supervisor in his individual capacity cannot be liable for retaliation under the FCA or DCWPA. Defendants argue that Count III fails because Brach never alleged the existence of an employee benefits plan to

---

[3] The SAC incorrectly refers to the DCWPA, 10 U.S.C. § 2409, as a section of the National Defense Authorization Act (the "NDAA"). Notably, § 2409 predates the NDAA; although the NDAA later amended § 2409, the NDAA did not establish that section or its anti-retaliation provision. *See, e.g.*, *United States ex rel. Cody v. Mantech Int'l Corp.*, ---F. Supp. 3d.---, 2016 WL 4940332, at *1 n.1 (E.D. Va. Sept. 14, 2016); *Dimartino v. Seniorcare*, No. RDB-15-3788, 2016 WL 3541217, at *4 n.4 (D. Md. June 29, 2016).

which ERISA may apply. Finally, regarding Counts V and VI—the retaliation claims based on Stanley's text messages—defendants contend that the messages are merely threats of countersuits during litigation, and therefore not actionable.[4]

## B.

A district court should dismiss a complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations cannot be mere speculation, and must amount to more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, neither a formulaic recitation of the elements of a cause of action nor unadorned conclusory allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-79. Instead, the complaint must allege facts sufficient to "nudge claims across the line from conceivable to plausible." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255-56 (4th Cir. 2009) (internal quotation marks and citations omitted).

## II.

### A. FCA Retaliation, 31 U.S.C. § 3730(h)

Count I alleges that Brach was discharged because he had complained to his superiors that CKC was overbilling the United States Navy. Defendants have moved, pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss Brach's FCA Retaliation claim as against the individual

---

[4] Although the parties dispute whether the text messages are actionable against defendants CKC and Stanley, the parties agree that Counts V and VI must be dismissed against Henderson, as she had no role in writing or sending the text messages.

defendants, Stanley and Henderson, on the ground that 31 U.S.C. § 3730(h)(1) authorizes relief only against an *employer*, and not against an individual supervisor sued in his individual capacity.[5]

> The FCA provides a cause of action to any "employee, contractor, or agent" who is:
>
> discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section . . . .

31 U.S.C. § 3730(h)(1). But the statutory text of this provision, in its current form, does not identify what entity or entities may be liable for the relief authorized in § 3730(h). To be sure, the previous version of this statutory provision—which was in effect until 2009—provided clearer guidance. The previous version provided:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment *by his employer* because of any lawful acts done by the employee on behalf of the employer or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (2003) (emphasis added). Importantly, courts interpreting the pre-2009 provision unanimously ruled that § 3730(h) precluded individual supervisor liability, because a supervisor is not an "employer" under the statute.[6]

---

[5] In this regard, defendants do not challenge Count I insofar as this Count alleges a claim against CKC.

[6] *See, e.g.*, *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 322 F.3d 738, 740 (D.C. Cir. 2003) (president and CEO of government contractor was not an "employer"); *United States ex rel. Golden v. Ark. Game & Fish Comm'n*, 333 F.3d 867, 870–71 (8th Cir. 2003) (holding that FCA retaliation claim must fail as against defendants sued in their individual capacities because such individuals were not "employers"); *United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 625 (S.D.N.Y. 2006) ("[F]or purposes of the FCA, supervisors are not employers subject to liability under § 3730(h)."); *Pollak v. Bd. of Trustees of Univ. of Ill.*, No. 99 C 710, 2004 WL 1470028, at *3 (N.D. Ill. June 30, 2004) ("[C]ourts have

Congress's omission of the term, "employer," in the current version of § 3730(h) arguably invites the inference that Congress, by this omission, intended to expand the class of potential defendants to include a plaintiff's supervisors sued in their individual capacities. And a handful of district courts have so held.[7] But the overwhelming majority of courts, including the Fifth Circuit,[8] have held that the current version of § 3730(h) does not create a cause of action against supervisors sued in their individual capacities.[9] Analysis confirms that this overwhelming chorus of opinions is correct.

---

uniformly held that supervisors, such as the Individual Defendants, do not qualify as "employers" subject to liability under the FCA.").

[7] *See United States ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09cv1127, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012); *Laborde v. Rivera–Dueño*, 719 F. Supp. 2d 198, 205 (D.P.R. 2010).

     Interestingly, the only other court in this district to have addressed the question declined to answer it at the Rule 12(b)(6) stage. *See Fitzsimmons v. Cardiology Assocs. of Fredericksburg, Ltd.*, No. 3:15cv72, 2015 WL 4937461, at *7-8 (E.D. Va. Aug. 18, 2015) (declining to determine at the Rule 12(b)(6) stage whether § 3730(h) permits individual liability "in the absence of binding precedent" or "specific statutory analysis offered by either [party]"); *accord Huang v. Rector & Visitors of Univ. of Va.*, 896 F. Supp. 2d 524, 548 n.16 (W.D. Va. 2012) (declining to dismiss § 3730(h) claim against individual defendants "out of hand" without guidance from the Fourth Circuit and where the defendants did not raise the issue).

[8] *Howell v. Town of Ball*, 827 F.3d 515, 529-30 (5th Cir. 2016). Research indicates that the Fifth Circuit is the only United States Court of AppealS that has addressed this issue.

[9] *See, e.g.*, *United States ex rel. Conroy v. Select Med. Corp.*, No. 312CV00051RLYDML, 2016 WL 5661566, at *19 (S.D. Ind. Sept. 30, 2016); *United States v. Monaco Enters., Inc.*, No. 2:12-CV-0046-LRS, 2016 WL 3647872, at *10 (E.D. Wash. July 1, 2016); *Scott v. Bonnes*, 135 F. Supp. 3d 906, 921 (S.D. Iowa 2015); *United States v. N. Am. Health Care, Inc.*, No. 14-CV-02401-WHO, 2015 WL 6871781, at *8 (N.D. Cal. Nov. 9, 2015); *United States v. A Plus Physicians Billing Serv., Inc.*, No. 13 C 7733, 2015 WL 4978686, at *5 (N.D. Ill. Aug. 20, 2015); *Calisesi ex rel. United States v. Hot Chalk, Inc.*, No. CV-13-01150-PHX-NVW, 2015 WL 1966463, at *15 (D. Ariz. May 1, 2015); *De-Chu Christopher Tang v. Vaxin, Inc.*, No. 2:13-CV-401-SLB, 2015 WL 1487063, at *6 (N.D. Ala. Mar. 31, 2015); *Lampenfeld v. Pyramid Healthcare, Inc.*, No. 3:14-CV-0283, 2015 WL 926154, at *5 (M.D. Pa. Mar. 4, 2015); *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 86 (D.D.C. 2014); *United States ex rel. Fryberger v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 813-14 (N.D. Cal. 2014); *U.S. ex rel. Wuestenhoeffer v. Jefferson*, No. 4:10-CV-00012-DMB, 2014 WL 7409760, at *8 (N.D. Miss. Dec. 31, 2014); *Rangarajan v.*

To begin with, the Supreme Court has stated that the "task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *see also Trejo v. Ryman Hospitality Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) ("When interpreting statutes [courts] start with the plain language."). Moreover, the Supreme Court has instructed courts considering the effect of an amendment on legislation to "read the Act as a whole . . . [and not] ignore the common sense, precedent, and legislative history of the setting that gave it birth." *Fed. Trade Comm'n v. Jantzen, Inc.*, 386 U.S. 228, 234–35 (1967); *Howell v. Town of Ball*, 827 F.3d 515, 530 (5th Cir. 2016) (noting same). Importantly, it is "firmly entrenched" as a matter of statutory construction that "Congress is presumed to enact legislation with knowledge of the law; that is with the knowledge of the interpretation that courts have given to an existing statute." *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995); *Howell*, 827 F.3d at 530 ("Congress

---

*Johns Hopkins Health Sys. Corp.*, No. WMN-12-1953, 2014 WL 6666308, at *6 (D. Md. Nov. 21, 2014); *U.S. ex rel. Black v. Am. Soc'y for Eng'g Educ.*, No. CIV.A. 12-1139, 2014 WL 1765337, at *6 (E.D. Pa. May 2, 2014); *Taylor v. N.Y. State Office for People with Developmental Disabilities*, No. 1:13-CV-740 NAM/CFH, 2014 WL 1202587, at *10 (N.D.N.Y. Mar. 24, 2014); *Monsour v. N.Y. State Office for People with Developmental Disabilities*, No. 1:13–CV–0336 TJM CFH, 2014 WL 975604, at *11 (N.D.N.Y. Mar. 12, 2014); *Perez–Garcia v. Dominick*, No. 13 C 1357, 2014 WL 903114, at *5 (N.D. Ill. Mar. 7, 2014); *Wichansky v. Zowine*, No. CV–13–01208–PHX–DGC, 2014 WL 289924, at *3–5 (D. Ariz. Jan. 24, 2014); *Elkharwily v. Mayo Holding Co*, 955 F. Supp. 2d 988, 995 (D. Minn. 2013); *Russo v. Broncor, Inc.*, No. 13–cv–348–JPG–DGW, 2013 WL 7158040, at *6 (S.D. Ill. July 24, 2013); *U.S. ex rel. Mooney v. Americare, Inc.*, No. 06-CV-1806 FB VVP, 2013 WL 1346022, at *8 (E.D.N.Y. Apr. 3, 2013); *United States ex rel. Abou-Hussein v. Sci. Apps. Int'l Corp.*, No. 2:09-1858-RMG, 2012 WL 6892716, at *3 (D.S.C. May 3, 2012); *Howell v. Town of Ball*, No. 12–951, 2012 WL 6680364, at *2 (W.D La. Dec. 21, 2012); *Fisch v. New Heights Academy Charter Sch.*, No. 12–cv–2033, 2012 WL 4049959, at *4 (S.D.N.Y. Sept. 13, 2012); *Aryai v. Forfeiture Support Assocs.*, 25 F. Supp. 3d 376, 385-87 (S.D.N.Y. 2012); *Mahony v. Universal Pediatric Servs., Inc.*, 753 F. Supp. 2d 839, 846 (S.D. Iowa 2010), *aff'd*, 643 F.3d 1103 (8th Cir. 2011).

is presumed to be aware of judicial interpretations of the law, and . . . is assumed to have acted with awareness of judicial interpretations of prior law.").

To state the obvious, the 2009 amendment to § 3730(h) expanded the class of potential plaintiffs, but is silent on the question whether a plaintiff may bring a cause of action against a supervisor sued in his individual capacity. Importantly, however, Congress is presumed to have known that courts had unanimously ruled that the pre-2009 version of § 3730 did not allow for individual supervisor liability. Thus, to accept Brach's argument—that Congress's amendment silently expanded § 3730(h) to include supervisor liability—is to assume that Congress overturned unanimous, pre-amendment judicial authority by negative implication. *See, e.g.*, *Howell*, 827 F.3d at 530 ("Adopting [plaintiff's] argument means concluding that Congress overturned [unanimous] precedent, not by the insertion of express language expanding liability, but only by mere implication."); *Aryai*, 25 F. Supp. 3d at 386 (noting same). Such an assumption is unwarranted because Congress, had it intended to overturn unanimous case law, could have simply replaced the term, "employer," with "any person" in order to expand the class of potential defendants.[10] As the Fifth Circuit has stated in addressing this precise issue, "[I]t is clear that the reference to an 'employer' [in § 3730(h)] was deleted to account for the broadening of the class of FCA plaintiffs to include "contractors" and "agents," not to provide liability for individual, non-employer defendants." *Howell*, 827 F.3d at 530.[11]

---

[10] Indeed, Brach's FLSA retaliation claim proves the point, as the FLSA—in contrast to the FCA—specifically states that "it shall be unlawful for *any person*" to retaliate against an employee engaged in activities protected by the FLSA. 29 U.S.C. § 215(a)(3).

[11] *Accord Aryai*, 25 F. Supp. 3d at 387 ("[I]t [is] more likely that Congress deleted the word 'employer' not to provide for individual liability but to avoid confusion in cases involving a 'contractor or agent' rather than an 'employee.'").

Moreover, the text of § 3730(h), read as a whole, forecloses the argument that a supervisor may be sued in his individual capacity. *See, e.g., Jantzen*, 386 U.S at 234-35 (courts should read a statute "as a whole" when evaluating an amendment's affect). This is so because the current version of § 3730(h) continues to prescribe *mandatory* remedies, such as reinstatement.[12] Such *mandatory* language undermines the argument that § 3730(h) contemplates individual supervisor liability because, as the D.C. Circuit observed in rejecting the argument that the pre-2009 provision allowed supervisor liability, "a mere supervisor could not possibly grant [remedies such as reinstatement] in his individual capacity." *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001). And, as other courts have correctly noted, the D.C. Circuit's logic holds firm even after Congress amended § 3730(h). *See Aryai*, 25 F. Supp. 3d at 387 ("The same logic [in *Yesudian*, 279 F.3d at 972] remains sound even after the 2009 amendment [because] interpreting amended section 3730(h) to provide for individual liability is inconsistent with the mandatory remedy of reinstatement.").

Similarly, insofar as it is appropriate to consider legislative history,[13] the House and Senate Reports clearly point to the conclusion that the 2009 amendments did not expand §

---

[12] In pertinent part, 31 U.S.C. § 3730(h)(2) provides:

> Relief under [this section] *shall* include *reinstatement* with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

31 U.S.C. § 3730(h)(2) (emphasis added); *see also Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 872 (4th Cir. 1999) (holding that relief under § 3730(h) is mandatory).

[13] *Compare Jantzen*, 386 U.S. at 234-35 (courts considering amendments to statutes must "read the Act as a whole . . . [and not] ignore the common sense, precedent, and legislative history of the setting that gave it birth") *and Howell*, 827 F.3d at 530 (relying on statutory history in analyzing amendments to § 3730(h)), *with Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia,

3730(h) liability to include supervisors. Indeed, the House Report states that Congress intended the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover . . . people related to or associated with relators, and contract workers and others who are not technically 'employees.'" H.R. Rep. No. 111–97, at 14 (2009). In this regard, the House Report focuses solely on expanding the class of *plaintiffs*, but is silent regarding any intent to expand the scope of permissible *defendants*. *See id.*

Similarly, the Senate Report shares this focus on expanding the class of plaintiffs, but, significantly, says nothing about expanding the class of defendants. Specifically, the Senate Report states that although § 3730(h) "was designed to protect employees from employer retaliation," court decisions had "narrowly interpreted the definition of 'employee' and thus le[ft] contractors and subcontractors open to retaliation." S. Rep. No. 110–507, 110th Cong., 2nd Session (Sept. 25, 2008), 2008 WL 4415147 at *26 & n.93. Thus, the Senate Report states that the statutory amendment is to "correct this loophole" and "to assist individuals who are not technically employees . . . but nonetheless have a contractual or agent relationship with an *employer*." *Id.* at *26-27 (emphasis added). Thus, as the legislative history makes clear, to accept Brach's position is to conclude that Congress changed the law significantly by amending the statute without explicitly stating so in either the legislative history or the statutory text.

In sum, this analysis points persuasively to the conclusion that 31 U.S.C. § 3730(h) does not provide for individual supervisor liability. Accordingly, Brach's FCA claim against defendants Stanley and Henderson fails as a matter of law.

---

J., concurring) ("The greatest defect of legislative history is its illegitimacy. We are governed by laws, not by the intentions of legislators.") *and id.* (legislative history is "the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends").

**B. DCWPA Reprisal, 10 U.S.C. § 2409**

Brach's DCWPA reprisal cause of action echoes his FCA retaliation claim. Brach alleges (i) that he made a disclosure protected by 10 U.S.C. § 2409(a) by raising with his superiors the issue of potential overbilling, and (ii) that Brach's termination was a reprisal for his doing so. Brach's claim against the individual defendants, Stanley and Henderson, fails for substantially similar reasons to those stated *supra*, Part II.A. Put simply, Brach's claim against his supervisors fails as a matter of law because § 2409 does not provide for individual supervisor liability.[14]

As relevant here, § 2409(c)(2) states that a plaintiff who has exhausted his administrative remedies may bring a reprisal claim against a "contractor." 10 U.S.C. § 2409(c)(2).[15] A "contractor" is statutorily defined as "a person awarded a contract with an agency." 10 U.S.C. § 2409(g)(4); *see also* 48 C.F.R. § 203.906. Given this definition, the "contractor" here is clearly CKC, not the individual defendants, Stanley and Henderson.

Moreover, the analysis regarding proper defendants in the FCA anti-retaliation context is persuasive in the DCWPA anti-reprisal context because the two statutory provisions are

---

[14] Section 2409 provides in pertinent part:

> An employee of a contractor, subcontractor, grantee, or subgrantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of the following:
>> (A) Gross mismanagement of a Department of Defense contract or grant a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract.

10 U.S.C. § 2409(a).

[15] Section 2409 also provides that a "grantee" or "subgrantee" may be liable for reprisal. This provision is inapposite here, however, as a "grantee" is a "person awarded a grant with a [government] agency," and the SAC does not involve any allegation that any defendant received such a grant. *See* 10 U.S.C. § 2409(g)(7) (defining "grantee").

essentially similar. *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 n.4 (5th Cir. 2001) ("[A]s a matter of statutory interpretation in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar language."); *In re Crescent City Estates, LLC*, 588 F.3d 822, 829 (4th Cir. 2009) (applying same principle to fee-shifting statutes); *United States ex rel. Cody v. Mantech Int'l Corp.*, --- F. Supp. 3d ---, 2016 WL 4940332 (E.D. Va. Sept. 14, 2016) (interpreting 31 U.S.C. § 3730(h) and 10 U.S.C. § 2409 as requiring the same elements to state a *prima facie* case). Indeed, in the instant case, all parties properly agree that the FCA anti-retaliation provision, § 3730(h), provides an appropriate guide for interpreting the DCWPA's anti-reprisal provision, § 2409. It follows that because FCA liability is limited to employers and does not extend to individual supervisors, the same is true for the DCWPA—liability extends to "contractors," but not to a contractor's individual employees sued in their individual capacities.[16]

Accordingly, Brach's DCWPA claim against Stanley and Henderson fails as a matter of law and proceeds against only CKC.

### C. Denial of Employment Benefits, 29 U.S.C. 1132(a)

Brach alleges in Count III that he was denied employment benefits in violation of ERISA, 29 U.S.C. § 1132(a). This claim fails because Brach has not alleged in the SAC the existence of an employee benefit plan to which ERISA might apply.

---

[16] Seeking to avoid this result, Brach cites *Manion v. Spectrum Healthcare Res.*, 966 F. Supp. 2d 561, 566 (E.D.N.C. 2013) for the proposition that DCWPA liability may extend to supervisors who have a "unity of interest" with—or "ownership" of—a contractor. Brach's reliance on *Manion* is misplaced, however, because that case addressed the question whether the DCWPA permitted one company to be held jointly-liable for the actions of an *alter ego*. That situation is inapposite to the case at bar, as there is no allegation here that CKC operated through an *alter ego* or a shell company, or that the principle of corporate veil-piercing applies in this case.

ERISA provides that a "participant or beneficiary" may "recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).[17] Importantly, however, ERISA does not *require* an employer to create a plan for its employees; rather, the statute simply establishes rules in the event an employer elects to implement a benefit plan. *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996) ("Nothing in ERISA requires employers to establish employee benefits plans."). As the Supreme Court put it, ERISA simply "ensure[s] that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Id.*

Thus, Brach's § 1132(a) claim must fail, as the SAC never alleges that CKC implemented a benefit plan that would be subject to ERISA. Indeed, Brach conceded in his brief and at oral argument that the SAC is deficient in this regard. Yet, Brach forecasted that he could allege sufficient facts in a third amended complaint to state a plausible claim (i) that CKC offered a benefits plan to employees, (ii) that this plan was offered to non-owner employees of the company, and (iii) that plaintiff was denied such benefits, despite being an employee.

Accordingly, Count III has been dismissed with leave to amend. *See Brach v. Conflict Kinetics Corporation*, No. 1:16-cv-978 (E.D. Va. Nov. 18, 2016) (Order) (Doc. 23).

### D.  FLSA Retaliation, 29 U.S.C. § 215

Count V alleges that each defendant retaliated against Brach for Brach's filing an FLSA claim in this action. Specifically, Brach alleges that Stanley, acting as CKC's agent, sent Brach

---

[17] A "plan" for the purposes of ERISA is an employee welfare benefit plan or an employee pension benefit plan, or a plan that includes both. 29 U.S.C. § 1002(3); *see also id.* §§ 1002(1) and (2) (defining "employee welfare benefit plan" and "employee pension benefit plan").

text messages to dissuade Brach from pursuing an FLSA claim. Stanley sent the first text message on August 7, 2016—just over a week after Brach filed his initial lawsuit—which stated:

> C- I want to go on the record that I don't want to enter into a lawsuit war with you. I've done the math up and down and no matter who wins…. Only the lawyers actually win. If you win you'll eat it all up in the counter lawsuits. If I win all my proceeds will go to the lawyers and you won't be able to pay them anyway. I just want to be clear. I don't want to be involved in this.

SAC, Ex. 1. Ten days later, on August 17, 2015, Stanley sent the following two text messages to Brach:

- "Warm up your savings for the counter suit. Don't run out"; and

- "I know your ego is crazy out of control but did you walk this through with Mandy?[18] It's a gnarly gamble. No upside with a downside potential of loosing [sic] 100,000.00."

SAC, Ex. 2. According to Brach, these text messages constitute actionable retaliation pursuant to 29 U.S.C. § 215. Defendants disagree, arguing that these messages do not rise to the level of retaliatory conduct.

The FLSA makes it unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter[.]" 29 U.S.C. § 215(a)(3). Although Brach had already been discharged by the time Stanley sent the text messages, the Fourth Circuit has held that an FLSA retaliation claim may lie for retaliatory acts committed against an ex-employee. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008). Importantly, "a plaintiff asserting a retaliation claim under the FLSA need only allege that his employer retaliated against him by engaging in an action 'that would have been materially

---

[18] In his opposition brief and at oral argument, Brach asserted that the individual identified as Mandy is Brach's wife, and thus Stanley's text message is particularly threatening. Surprisingly, however, this fact does not appear on the face of the SAC.

adverse to a reasonable employee' because the 'employer's actions . . . could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

Here, Stanley's text messages are merely *threats* of counterclaims, which defendants argue are not, as a matter of law, materially adverse to a reasonable employee. In this regard, defendants cite *Ergo v. Int'l Merch. Servs., Inc.*, 519 F. Supp. 2d 765 (N.D. Ill. 2007), a case expressing doubt that the mere threat of countersuit "could ever constitute retaliation." *Id.* at 781. Defendants also emphasize that because Brach has in fact persisted in his claims in this action—indeed, Brach has twice amended the complaint *after* receiving Stanley's text messages—Brach cannot show that the messages dissuaded him from supporting his FLSA claim.

To be sure, there is some force in this argument. Indeed, any plaintiff must necessarily be aware that filing a lawsuit may result in the filing of a counterclaim; in some circumstances, the filing of a counterclaim is *compelled* by the Federal Rules of Civil Procedure. *See* Rule 13(a), Fed. R. Civ. P.[19] Given this, it is difficult to understand how the mere *threat* of a counterclaim specifically contemplated in the Rules as permissive or mandatory could be retaliatory.[20]

Yet, the Fourth Circuit has promulgated a permissive test that permits Brach's claim based on the text messages to survive a motion to dismiss. In this respect, in *Darveau v. Detecon,*

---

[19] *See also Gross v. Akin, Gump, Hauer & Feld, LLP*, 599 F. Supp. 3d 23, 34 (D.D.C. 2009) (compulsory counterclaim normally will not "chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaim, plaintiffs will have already made their charges and initiated a lawsuit").

[20] *Cf. Ergo*, 519 F. Supp. 2d at 781 ("[W]ith regard to Defendants' threatened but unfiled counterclaim, the Court is not convinced that such an action could ever constitute retaliation in this context. . . . To the extent the threat was improper and could have harmed Plaintiffs' ability to advance their claims, it would be a matter to be resolved by court rules, not by the FLSA."); *Steffes v. Stepan, Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998) ("[I]t will be a rare case in which conduct occurring within the scope of litigation constitutes retaliation . . . .").

*Inc.*, the Fourth Circuit held that even a counterclaim could be retaliatory if the counterclaim (i) lacks "reasonable basis in fact or law" and (ii) was filed with "retaliatory motive." 515 F.3d at 341. Moreover, the Fourth Circuit in *Darveau* held that a plaintiff asserting an FLSA retaliation claim "need only allege" an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 343.[21] Thus, if the text messages in this case "could well dissuade a reasonable worker from making or supporting" an FLSA claim, then Brach's FLSA retaliation claim survives at the Rule 12(b)(6) stage.

Here, the text messages—which threaten that Brach could lose his savings and $100,000 as a result of bringing the instant lawsuit—and the allegations in the SAC are sufficient under *Darveau* to state a plausible claim that a reasonable worker could well be dissuaded from supporting an FLSA overtime claim. Similarly, the SAC states sufficient facts to make it plausible that the text messages were sent with retaliatory motive and without reasonable basis in fact or law.[22]

_____

[21] Oddly, the *Darveau* court held that the applicable standard is whether a reasonable worker would be dissuaded from making or supporting a charge of *discrimination*, as opposed to supporting an FLSA claim, such as a charge of unpaid overtime. *See* 515 F. 3d at 343. It seems that the Fourth Circuit intended to establish the latter standard; indeed, the underlying FLSA-protected activity in *Darveau* that gave rise to a retaliation claim was the plaintiff's allegation of wrongful denial of overtime pay—not discrimination. This discrepancy is likely explained by the fact that the *Darveau* court was adopting and quoting the standard established by the Supreme Court in Title VII retaliation cases. *See id.* (quoting *Burlington*, 548 U.S. at 57). And naturally, the protected activity that could give rise to a Title VII retaliation claim would involve the making or supporting of a discrimination claim.

[22] Nothing in this opinion, however, should be read to preclude defendants from seeking summary judgment on Brach's FLSA retaliation claim after a full factual record is developed. In this regard, it is important to note that the case on which defendants chiefly rely—*Ergo*, 519 F. Supp. 3d 765—was decided on summary judgment and specifically focused on the specific context presented by the factual record. *See* 519 F. Supp. 2d at 781 ("[W]ith regard to Defendants' threatened but unfiled counterclaim, the Court is not convinced that such an action could ever constitute retaliation *in this context*.") (emphasis added).

Accordingly, the Rule 12(b)(6) motion must be denied with respect to Brach's FLSA retaliation claim against defendants CKC and Stanley.[23]

### E. ERISA Retaliation, 29 U.S.C. § 1140.

Brach's ERISA retaliation claim is based on the same text messages that gave rise to the FLSA retaliation claim.[24] Although the FLSA claim survives, Brach's ERISA retaliation claim must be dismissed with leave to amend. This is so because, as stated above, Brach failed to allege the existence of an employee benefit plan to which ERISA applies. As the Fourth Circuit observed in *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410 (4th Cir. 1993), ERISA applies only to "employee benefit plans that are established or maintained by an employer 'engaged in commerce or in any . . . activity affecting commerce,' an employee organization, or both." 12 F.3d at 417 (quoting 29 U.S.C. § 1003(a)). Not surprisingly, courts have routinely dismissed ERISA retaliation claims pursuant to Rule 12(b)(6) where plaintiffs fail to allege the existence of a plan covered by ERISA. *See, e.g.*, *Inman v. Kockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 652-53 (W.D. Va. 2006); *Davenport v. Anne Arundel Cnty. Bd. of Educ.*, No. GLR-12-1335, 2012 WL 6043641, at *6 (D. Md. Dec. 4, 2012) (same).[25]

---

[23] As stated above, the parties agree that this claim must be dismissed against defendant Henderson. *See supra* note 4.

[24] Section 1140 of ERISA makes it unlawful "for any person for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary [of a plan] for exercising any right to which he is entitled under the provisions of an employee benefit plan [or] this subchapter . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140.

[25] Furthermore, it is worth observing that a plaintiff pursuing a § 1140 claim must ultimately prove that the employer was motivated by the specific intent to interfere with the plaintiff's exercise or attainment of rights under the plan. *See Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 239 (4th Cir. 1991) ("[T]o take advantage of § [1140], one must prove a specific intent to interfere with an employee's [ERISA] rights."). It strains credulity to argue that a plaintiff

In this regard, because Brach has been granted leave to amend the complaint to allege the existence of an ERISA plan with respect to Count III, it is appropriate to grant Brach leave to amend his ERISA retaliation claim, too.[26]

## III.

In sum,

- Count I, which alleges retaliation in violation of 31 U.S.C. § 3730(h), fails to state a claim against defendants Stanley and Henderson;

- Count II, which alleges reprisal in violation of 10 U.S.C § 2409, also fails to state a claim against defendants Stanley and Henderson;

- Count III, which alleges the wrongful denial of employment benefits in violation of 29 U.S.C. 1132(a), is dismissed with leave to amend;

- Count V, which alleges retaliation in violation of 29 U.S.C. § 215, states a claim against defendants CKC and Stanley; and

- Count VI, which alleges retaliation in violation of 29 U.S.C. § 1140, is dismissed with leave to amend against defendants CKC and Stanley.

Appropriate Orders have issued.

Alexandria, Virginia
December 1, 2016

/s/

T. S. Ellis, III
United States District Judge

---

could meet this requirement without alleging, in the first instance, the existence of a plan governed by ERISA.

[26] *See Brach v. Conflict Kinetics Corp.*, No. 1:16-cv-978 (E.D. Va. Nov. 18, 2016) (Order). Notably, the parties have also agreed that Brach's ERISA retaliation claim must be dismissed against defendant Henderson. *See supra* note 4.

19