**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **CAMERON BRACH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:16-cv-978-TSE/JFA** |
| | ) | |
| **CONFLICT KINETICS CORPORATION, *et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

| | |
|---|---|
| **CONFLICT KINETICS CORPORATION,** | ) |
| | ) |
| **Counterclaim Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CAMERON BRACH and INDEPENDENT RECRUITING CONSULTANTS, LLC,** | ) |
| | ) |
| **Counterclaim Defendants.** | ) |

**COUNTERCLAIM PLAINTIFF CONFLICT KINETICS CORPORATION'S**
**<u>OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Russell J. Gaspar
Andrew K. Wible
Victor G. Klingelhofer
Cohen Mohr LLP
1055 Thomas Jefferson St., N.W.
Suite 504
Washington, D.C. 20007
(202) 342-2550 (telephone)
(202) 342-6147 (facsimile)

*Attorneys for Conflict Kinetics Corporation*

# TABLE OF CONTENTS

**Section**                                                                                                    **Page**

I.      Summary ........................................................................................................ 1

II.     Statement Of Disputed Material Facts ........................................................... 1

        A.      Joe Trippodo's Security Clearance ..................................................... 1

        B.      Brach's Access to CKC Information Technology Systems .................. 2

        C.      Computer Located in Brach's Former Office ...................................... 6

        D.      Computer Located in the Conference Room ........................................ 7

        E.      Damages .............................................................................................. 7

III.    Applicable Legal Standard ............................................................................. 8

IV.     Argument ....................................................................................................... 9

        A.      Genuine Issues of Material Fact Preclude Summary Judgment on
                Count I of the Counterclaim for Violation of the CFAA. ................... 9

                1.      CFAA Does Not Require Direct Evidence Of Unauthorized
                        Access. ................................................................................... 10

                2.      There Are Genuine Issues of Material Fact That CKC Suffered
                        Damage and Loss. .................................................................. 11

        B.      Genuine Issues of Material Fact Preclude Summary Judgment on
                Count II of the Counterclaim for Violation of the VCCA. ................. 13

        C.      Brach's Motion For Summary Judgment on Count III Must Be Denied. ............ 14

                1.      Brach Cannot Support His Claim That He Was Unaware
                        Trippodo Would Be Ineligible To Perform The Contract. ...... 15

                2.      Brach Has No Evidence Whatsoever To Support The Assertion
                        That Trippodo Told CKC His Clearance Was Flagged. .......... 17

                3.      CKC Was Clearly Damaged By Brach's Constructive Fraud. ........... 18

                4.      The Duty to Mitigate Damages Does Not Obligate CKC to Sue
                        Trippodo Before Asserting a Claim Against Brach. ................ 18

V.      Conclusion .................................................................................................... 19

ii

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................... 8

*Bank of Montreal v. Signet Bank*, 193 F.3d 818 (4th Cir. 1999) ........................................ 15, 17

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ................................................................ 8

*Diaz Vicente v. Obenauer*, 736 F. Supp. 679 (E.D. Va. 1990) ...................................... 15

*Evans v. Techs. Applications & Serv., Co.,* 80 F.3d 954 (4th Cir.1996) ...................... 8

*Expert Bus. Sys., LLC v. BI4CE, Inc.*, 233 F. App'x 251 (4th Cir. 2007) ...................... 11

*Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc.*, No. 2:09-CV-01278,
    2011 WL 3022239 (S.D.W. Va. July 22, 2011) ....................................................... 19

*Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp. 2d 852 (E.D. Va.
    2009) ................................................................................................................ 15

*Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753 (E.D. Va. 2013) ........................... 18

*SNC-Lavalin Am., Inc. v. Alliant Techsystems, Inc.*, 858 F. Supp. 2d 620 (W.D. Va. 2012) ....... 18

**State Cases**

*Allen Realty Corp. v. Holbert,* 227 Va. 441 (1984) .................................................... 15

*Cohn v. Knowledge Connections, Inc.,* 266 Va. 362 (2003) ......................................... 15

*Hogan v. Miller*, 156 Va. 166 (1931) ........................................................................ 19

*Lawrence v. Wirth*, 226 Va. 408 (1983) ...................................................................... 18

*Monahan v. Obici Med. Mgmt. Servs., Inc.,* 271 Va. 621 (2006) ................................. 18

**Federal Statutes**

18 U.S.C. § 1030 ...................................................................................................... 1, 11, 12

44 U.S.C. § 3541 ...................................................................................................... 5

**Federal Rules**

Fed.R.Civ.P. 56 ........................................................................................................ 8

**Page**

**State Statutes**

Va. Code § 18.2-152.12 ........................................................................................................... 1

Va. Code § 18.2-152.4 ........................................................................................................... 13

Va. Code § 8.01–443 ........................................................................................................... 19

I.      **SUMMARY**

Cameron Brach ("Brach") and Independent Recruiting Consultants, LLC ("IRC") (collectively, "Brach"), have moved for summary judgment on defendant Conflict Kinetics Corporation's ("CKC") Counterclaim, which asserts causes of action for violation of the Computer Fraud and Abuses Act, 18 U.S.C. § 1030(g) ("CFAA") (Count I), violation of the Virginia Computer Crimes Act, Va. Code § 18.2-152.12 ("VCCA") (Count II), and constructive fraud (Count III).  The motion must be denied.  Genuine issues of material fact preclude summary judgment for Brach on Counts I and II, and the undisputed facts establish that Brach and IRC are liable to CKC on Count III as a matter of law.

II.     **STATEMENT OF DISPUTED MATERIAL FACTS**

        A.      **Joe Trippodo's Security Clearance**

        10.     CKC disputes Brach's Statement of Material Fact ("SMF") ¶ 10 to the extent that it asserts that Joe Trippodo ("Trippodo") gave Brach assurances that the problems relating to his security clearance had been "cleared up."  To the contrary, in December 2014, Trippodo sent an email to Brach disclosing that, as a result of a " flag" on his JPAS security history, the Marine Corps had declined to hire him and that "so far no SSO ha[d] agreed to pass" him for any position requiring a clearance.  Significantly, Trippodo also advised Brach that he believed this would likely happen if he were hired by CKC.  **CKC Exh. 50**.  Subsequently, on May 20, 2015, <u>after</u> Trippodo had reapplied for a "secret" clearance with the Navy, he reaffirmed his concerns regarding his potential employment with CKC, stating in an email to Brach that although his application was being processed by the Navy and the flagged issue was being adjudicated by DoDCAF, he did not know when those processes would be completed.  As a result, he was "troubled" by the Army's request for information concerning his clearance status.  **CKC Exh. 57**.  Finally, it is clear that both Brach and Trippodo understood all along that Trippodo's

1

unresolved clearance issues jeopardized his eligibility to perform on the Germany contract, and were attempting to conceal their knowledge. In Trippodo's July 28, 2015 email to Brach, sent after the Army SSO in Germany had discovered the "flag" issue and disqualified Trippodo from performing on the contract, Trippodo asked Brach "How can I shield you? What can I say *or claim* that helps you out?" (emphasis added). **CKC Exh. 60-61.**

11.     CKC disputes SMF ¶ 11 to the extent that it asserts Trippodo told Brach that the Navy was issuing him a new security clearance. The SMF grossly mischaracterizes Brach's deposition testimony. Brach testified that Trippodo told him *only* that he was "cleared to obtain a Secret" or "the Navy was processing him for a clearance." **CKC Exh. 60 and Brach Dep. at 216:3-217:19; CKC Exh. 61 and Brach Dep. at 219:5-220:10.** Brach admitted that he understood those statements to mean only that Trippodo had been *permitted to apply for* a clearance, and not that *he would actually receive* a clearance. **CKC Exh. 62; Brach Dep. at 222:9-224:19.**

13.     CKC disputes SMF ¶ 13 to the extent that it asserts that Brian Stanley ("Stanley") did not ask Brach to identify any blemishes in Trippodo's background. That statement is contradicted by Stanley's deposition testimony, on which Brach purportedly relies. First, Stanley's statement that Brach thought things were "all going to work out" was made <u>after</u> Trippodo had been excluded from the contract and was returning home. Significantly, Stanley testified that prior to departing for Germany, he specifically asked Brach if Trippodo had a clean background, and that Brach responded it was "absolutely clean." **Stanley Dep. 81:5-20; 87:8-88:16.**

### B.     Brach's Access to CKC Information Technology Systems

22.     CKC disputes SMF ¶ 22 to the extent that it asserts Brach no longer had access to CKC's IT systems after August 9, 2015. Ben Myrick ("Myrick") testified that after August 9,

2015, he discovered evidence of an unauthorized installation of TeamViewer software on the computer that Brach used at CKC, consisting of TeamViewer log files showing that the software had been installed on the computer and used during the period that IRC's contract with CKC was in effect. **Myrick Dep. at 49:4-53:4; CKC Exh. 109.**[1]  Both Myrick and Luigi Canali ("Canali"), CKC's expert witness, testified that although Brach's CKC password was changed by August 9, 2015, he was still able to access the computer through TeamViewer as long as anyone else was logged onto it. **Myrick Dep. at 19:13-20-9; Canali Dep. at 23:9-26:18, 39:13-40:7.** The factual record establishes that after CKC terminated its contract with IRC, Brach's former computer was assigned to CKC employee Vashti Robinson ("Robinson"), who logged in using Brach's credentials, but with a newly generated password. **Stanley Decl, ¶ 2; Myrick Dep. at 23:15-24-9.**  The record also establishes that Brach's former computer was not configured to automatically lock following a period of inactivity (requiring a user to re-enter the password), and that Robinson may not have locked the computer when she was not using it, therefore providing opportunities for Brach to gain surreptitious access to the system. ***Id.* at 28:2-29:7; Canali Dep. at 39:3-7.**

24.     CKC disputes SMF ¶ 24 to the extent that it asserts that Canali found no evidence to support that Brach had access to his former workstation through TeamViewer after his termination.  Canali testified that he found TeamViewer configuration files on the computer, which were evidence that the program had been installed at some point. **Canali Dep. at 24:7-26:18.**  Myrick testified that he and Canali determined from the TeamViewer configuration files' metadata that the software had been installed and used in April, May, and June 2015, during the

---

[1]     Because the .log files cannot be converted to .pdf format and are offered solely for the associated metadata (e.g., Date Modified), the exhibit is a spreadsheet identifying the native files produced in discovery and the relevant metadata fields, together with a "screenshot" of the files revealing their properties.

period Brach worked at CKC. **Myrick Dep. at 50:10-51:12, 52:5-53:4.** Myrick testified that only he and Robinson had access to Brach's former computer after August 9, 2015, and that he observed an open web browser window that was logged into Brach's personal Gmail account. **Myrick Dep. at 25:1-13; 30:7-31:4.** Robinson testified that she observed that files were missing that she had not deleted, and that when she opened a browser it was already logged into Brach's Gmail account. **Robinson Dep. at 39:12-40:12.** Canali's report states that through his forensic examination he recovered several PST files from the computer that were modified on August 18, 2015, which were associated with the email account "Cameron.Franklin@Next-Recruit.Com." **CKC Exh. 112 at CKC_024249_0002.** The record established that "Cameron.Franklin@Next-Recruit.Com" was an IRC account owned and maintained by Brach. **Brach Dep. at 16:11-17.** Canali testified that it was unlikely Robinson was responsible for generating the PST files (or causing them to be modified on August 18, 2015) since those were personal to Brach and required his credentials to access. **Canali Dep. at 41:8-42:5, 44:21-46:2.**

26.     CKC disputes SMF ¶ 26 to the extent that it asserts Brach did not have the credentials necessary to access his former computer through TeamViewer. Myrick testified that Brach's computer did not have an authorized installation of CKC-licensed TeamViewer software. **Myrick Dep. at 49:4-50:9.** Canali testified that Brach could have installed a free version of TeamViewer on his former computer, which would have permitted him to set the TeamViewer logon credentials himself. **Canali Dep. at 24:15-25:14, 26:7-18**. Both Myrick and Canali testified that Brach could have accessed his former computer using this free version of TeamViewer if someone else were logged into his former computer. **Myrick Dep. at 19:13-20:9; Canali Dep. at 23:9-26:18, 39:13-40:7.**

27.     CKC disputes SMF ¶ 27 to the extent that it asserts Brach could not access his former computer without a second set of credentials.  The evidence establishing that Brach could access his former computer through his unauthorized installation of TeamViewer without CKC credentials is set forth in Paragraph 22 and 26, above.

29.     CKC disputes SMF ¶ 29 to the extent that it asserts Canali found no evidence of unauthorized access.  The SMF mischaracterizes Canali's testimony.  Canali testified only that he found no "definitive" proof that Brach accessed the Wide Area Work Flow ("WAWF") site sufficient to warrant a report of unauthorized access to the federal government.  **Canali Dep. at 42:6-44:20.**  Canali's report states that through his forensic examination of Brach's former computer, he recovered several XML files associated with the WAWF website, as well as PST files associated with the email account "Cameron.Franklin@Next-Recruit.Com," all of which were modified on August 18, 2015.  **CKC Exh. 112 at CKC_024249_0002-0004.**  The record established that "Cameron.Franklin@Next-Recruit.Com" was an IRC account owned and maintained by Brach.  **Brach Dep. at 16:11-17.**  Canali testified that even though it might have been possible for Robinson to have generated the WAWF XML files dated August 18, 2015 by navigating to the WAWF website, she was <u>not</u> responsible for generating the PST files dated August 18, 2015, because those would have required Brach's username and password.  **Canali Dep. at 41:8-42:2.**

30.     CKC disputes SMF ¶ 30 to the extent that it asserts CKC would have informed the government as required by the Federal Information Security Management Act ("FISMA"),[2] if Canali had detected unauthorized access.  The SMF mischaracterizes Canali's testimony.  Canali testified only that FISMA required notice to the federal government if there were definitive proof

---

[2]     44 U.S.C. § 3541 *et seq.*

of unauthorized access of the WAWF or other federal systems, <u>not</u> CKC's systems.  **Canali Dep. at 42:6-44:20.**

31.    CKC disputes SMF ¶ 31 to the extent that it asserts Canali testified that it was unnecessary to inform the government because of the lack of definitive evidence to suggest unauthorized access generally.  Canali testified only that there was insufficient evidence that Brach had accessed the WAWF without authorization to justify informing the federal government.  **Canali Dep. at 42:6-44:20.**

### C.    Computer Located in Brach's Former Office

34.    CKC disputes SMF ¶ 34 to the extent that it asserts Myrick testified that the WAWF website did not display Brach's credentials.  Myrick testified only that the WAWF website was not "logged in under Mr. Brach's account," because it showed an error stating "user name and password were incorrect;" he could not recall whether it listed Brach's name.  **Myrick Dep. at 29:12-30:6.**

35.    CKC disputes SMF ¶ 35 to the extent that it asserts that while still working at CKC, Brach enabled his web browser to save his Gmail user name and password.  Brach's Declaration does not specifically identify his Gmail account as one for which he enabled his web browser to save his user name and password.  **ECF No. 97-7, ¶ 1**.  Myrick specifically testified that he did not know whether Brach had saved his user name and password for Gmail.  **Myrick Dep. at 33:3-34:8.**

43.    CKC disputes SMF ¶ 43 to the extent it omits material information relating to why Brach's former computer sat unused in Stanley's office.  This omission renders SMF ¶ 43 misleading.  In October 2015, Brach's counsel notified CKC of Brach's intent to file a lawsuit against CKC, and directed CKC to preserve and protect all potentially relevant data.  **Stanley Decl., ¶ 7 and Exh A.**  As a result of that letter, and in light of its potential relevance to Brach's

claims and CKC's potential counterclaims, CKC sequestered the computer in Stanley's office. *Id*. ¶ 8.

56.     CKC disputes SMF ¶ 56 to the extent that it asserts that Brach no longer had access to CKC's computer on August 18, 2015.  Paragraphs 22, 24, and 26, *supra*, establish that Brach had the ability to access to his former computer after the IRC contract was terminated, including on August 18, 2015, as well as circumstantial evidence that he in fact accessed the computer.  CKC further disputes SMF ¶ 56 to the extent it mischaracterizes Canali's testimony. Canali specifically testified that he did not believe Robinson could have generated the PST files relating to Brach's Gmail account because they required a username and password for access. **Canali Dep. at 41:15-21.**  It is also undisputed that Brach owned and maintained the email account associated with the PST files dated August 18, 2015, that were recovered by Canali. **CKC Exh. 112 at CKC_024249_0002; Brach Dep. at 16:11-17.**

### D.     Computer Located in the Conference Room

61.     CKC disputes SMF ¶ 61 to the extent that it omits material information relating to why Stanley directed Myrick not to delete Brach's profile.  This omission renders SMF ¶ 61 misleading.   In October 2015 Brach's counsel notified CKC of Brach's intent to file a lawsuit against CKC, and directed CKC to preserve and protect all potentially relevant data.  As a result of that letter, and in light of its potential relevance to CKC's potential counterclaims, CKC sequestered the conference room computer.  **Stanley Decl., ¶¶ 7-8 and Exh. A.**

### E.     Damages

71.     CKC Disputes SMF ¶ 71 to the extent that it asserts Robinson used Brach's former computer for several months.  Robinson testified that the computer crashed within about two weeks of her reporting the issues she observed relating to Brach's suspected unauthorized access of the computer.  **Robinson Dep. at 50:1-5.**  It was at that time that she requested and

began using a laptop computer; she did not use Brach's former computer again.  ***Id*. at 50:19-51:8; CKC Exh. 114.**

74.     CKC Disputes SMF ¶ 74 to the extent that it omits material information relating to why Stanley directed Myrick not to delete Brach's profile.  This omission renders SMF ¶ 61 misleading.  In October 2015, Brach's counsel notified CKC of Brach's intent to file a lawsuit against CKC, and directed CKC to preserve and protect all potentially relevant data.  As a result of that letter, and in light of its potential relevance to CKC's potential counterclaims, CKC sequestered the conference room computer.  **Stanley Decl. ¶¶ 7-8 and Exh. A.**  Further, CKC disputes SMF ¶ 74 to the extent that it asserts Canali was retained for the sole purpose of unlocking the conference room computer.  He was specifically retained by CKC to perform a forensic examination of the computer to determine whether Brach had accessed it after his termination, to assess the extent of any damage, and to ensure there was no malware or other malicious software on the computer.  Unlocking the computer was a necessary step in this analysis.  **CKC Exh. 112 at CKC_024249_0002.**

## III.    APPLICABLE LEGAL STANDARD

Summary judgment is appropriate when the movant shows that "there is no genuine issue as to any material fact and [is] entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986); *Evans v. Techs. Applications & Serv., Co.,* 80 F.3d 954, 958–59 (4th Cir.1996).  A material fact is one that might affect the outcome of the suit under governing law; a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  The movant has the initial burden to show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## IV.    ARGUMENT

Brach's motion for summary judgment must be denied because he has failed to carry his burden to show the absence of any genuine issue of material fact.  The evidence on record establishes genuine issues of material fact with respect to each element of Counts I and II of the Counterclaim.  Further, the undisputed facts do not support Brach's characterization of the evidence with regard to Count III.

### A.    Genuine Issues Of Material Fact Preclude Summary Judgment On Count I Of The Counterclaim For Violation Of The CFAA.

Brach's motion must be denied with respect to Count I of the Counterclaim because there are genuine issues of material fact regarding whether Brach accessed CKC's computer after CKC terminated its contract with IRC.  As set forth in the Statement of Disputed Material Facts ("DMF"), *supra*, there is evidence from which a reasonable trier of fact could conclude that Brach could and did access his former workstation by virtue of the unauthorized, stand-alone installation of TeamViewer.  DMF ¶ 22.

Specifically, Myrick testified that he and Canali discovered TeamViewer log files during Canali's forensic examination of the CKC workstation that Brach had used.  *Id*. ¶¶ 22, 24.  The metadata associated with the log files established that the program was installed and accessed during the period when the IRC contract was in effect, suggesting that Brach installed the software, but in any event establishing that he used the software.  *Id*. ¶ 24.  Myrick testified that the software was not an authorized installation of CKC-licensed TeamViewer software.  Canali testified that the installation of TeamViewer was probably a free version widely available on the internet, for which Brach would have set the logon credentials.  *Id*. ¶ 26.  Both Myrick and Canali testified that Brach could access the computer through TeamViewer despite not having CKC credentials if another user, *e.g.*, Robinson, was already logged in.  *Id*. ¶ 22.  Myrick

testified that Brach's former workstation was not configured to automatically lock after a period of inactivity, and that Robinson observed evidence that someone had accessed the computer after she had been away from the machine for some period of time.  *Id.*

Further, Canali's report and testimony establish evidence that Brach actually accessed the computer on August 18, 2015.  Based on his examination of the computer, Canali concluded that someone had accessed the CKC computer using Brach's credentials.  *Id.* ¶ 29.  During his deposition, Canali clarified that he did not believe it was possible that Robinson was responsible for generating the PST files since it would have required logon credentials that Robinson did not have.  *Id.* ¶¶ 24, 29.  Myrick also testified that he saw a browser window that was logged into Brach's Gmail account.  *Id.* ¶ 24.

These facts are material, and establish not only that Brach was able access his former CKC workstation following his termination, but that he in fact did so.

### 1.    CFAA Does Not Require Direct Evidence Of Unauthorized Access.

Brach's motion relies heavily on the fact that CKC's expert witness Canali could not "definitively" conclude that Brach or IRC had accessed any CKC system after his termination.  As stated specifically in DMF ¶¶ 24, 29-31, Brach's argument mischaracterizes Canali's testimony on this point.  Canali testified only that he could not definitively conclude that Brach had accessed the computer; however, he clearly found evidence from which a reasonable trier of fact could conclude by a preponderance of the evidence that Brach had accessed CKC's computer without authorization.

Brach also mischaracterizes Canali's testimony regarding CKC's obligation to notify the government of unauthorized access to the WAWF.  Canali testified only that there was insufficient evidence that Brach had accessed the WAWF, thereby obligating CKC to notify the government under FISMA.  DMF ¶¶ 29-31.  However, unauthorized access to the WAWF is

only one manner in which CKC alleged Brach and IRC violated the CFAA (ECF No. 32, ¶ 33(a)).  CKC can prove a violation of the CFAA by showing that Brach accessed CKC's computer without authorization and obtained information (*id.* ¶ 33(b)), 18 U.S.C. § 1030(a)(2)(C), *or* by showing that CKC suffered damage or loss as a result of Brach's unauthorized access (*id.* ¶ 33(c)), 18 U.S.C. § 1030(a)(5)(C).

Brach's contention that he is entitled to summary judgment because Canali did not definitively conclude that he accessed CKC's computer misstates the applicable legal standard. CKC need only establish by a preponderance of the evidence that Brach accessed CKC's computers without authorization. *See Expert Bus. Sys., LLC v. BI4CE, Inc.*, 233 F. App'x 251, 254 (4th Cir. 2007) (rejecting that direct evidence of unauthorized access is required to establish violation of CFAA).  More significantly, to defeat Brach's motion CKC need only establish that a genuine issue of material fact exists concerning whether Brach or IRC accessed CKC's computers without authorization.  The evidence detailed above clearly satisfies that burden; a reasonable trier of fact could conclude that Brach accessed CKC's computer without authorization, obtained information, and caused CKC to suffer damage or loss.

## 2.	There Are Genuine Issues Of Material Fact That CKC Suffered Damage And Loss.

Brach also argues that the only damages CKC suffered were the result of its own contractors and employees.  That argument is not supported by the facts.

It is undisputed that, prior to the termination of the IRC contract, Brach had configured the shared workstation in the CKC conference room so that it could only be accessed with his Office 365 credentials.  **Canali Dep. at 28:9-29:17, 30:15-31:1, 31:16-20.**  Because no one at CKC had Brach's logon credentials, the computer could not be used by anyone at CKC during that time.  ***Id.* at 31:16-20.**  It was also during this time that Robinson reported suspicious

activity occurring on Brach's former computer.  **Robinson Dep. at 39:12-40:12; Myrick Dep. at 23:15-24:9, 26:14-27:3.**  In light of that suspicious activity, it was reasonable for Stanley to sequester the shared workstation in the conference room and Brach's former computer until a forensic analysis could be conducted to ensure no malware could be spread across CKC's systems.  This is within the definition of "damage" under the CFAA. 18 U.S.C. § 1030(e)(8) ("the term 'damage' means any impairment to the integrity *or availability* of data, a program, a system, or information") (emphasis added).

Furthermore, in October 2015, CKC learned that Brach was threatening a lawsuit, and that his lawyers warned CKC to preserve all relevant electronic files.  **Myrick Dep. at 41:21-42:1.**  In light of that, as well as the ongoing doubts about the integrity of the data on the computer due to Brach's reconfiguration of the computer so that it could be accessed only through his personal Office 365 credentials, CKC replaced the conference room computer in January 2016, at a cost of $6,426.11.  **Stanley Decl., ¶ 9 and Exh. B.**  After the lawsuit was actually filed, CKC retained a forensic expert to examine both the conference room PC and Brach's former workstation, which cost $1,350.  **CKC Exh. 113.**  These costs fall within the definition of "loss" under the CFAA.  18 U.S.C. § 1030(e)(11) ("the term 'loss' means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service").

Accordingly, there are genuine issues of material fact regarding CKC's losses and damages.

### B.   Genuine Issues Of Material Fact Preclude Summary Judgment On Count II Of The Counterclaim For Violation Of The VCCA.

Brach's motion regarding Count II of the Counterclaim must be denied for the same reasons as Count I.

Brach erroneously argues that to prevail under the VCCA CKC must identify the specific files that Brach deleted or copied.  To defeat Brach's motion, CKC must establish that there exists a genuine issue of material fact that Brach temporarily or permanently removed or disabled computer data from a computer, Va. Code § 18.2-152.4.A.1, or alter or erase any computer data, *id*. § 18.2-152.4.A.3.  CKC has done so.

With respect to the conference room workstation computer, the unrebutted testimony of CKC's expert witness, Mr. Canali, established that Brach had reconfigured the computer to be accessible only with his Office 365 credentials, which no one else at CKC had.  **Canali Dep. at 28:9-29:17, 30:15-31:1, 31:16-20.**  This clearly establishes that Brach disabled access by any other CKC employee to data on the conference room computer, at least until Mr. Canali was able to restore access.  The fact that it was possible for Myrick or Canali to restore access to the conference room computer is irrelevant to whether, as a result of Brach's actions, it was temporarily disabled.

Further, the testimony of Messrs. Canali and Myrick establishes that Brach had the ability to access his former computer after the termination of the IRC contract, and that there was evidence that he did so.  DMF ¶¶ 22, 24, 26.  Mr. Myrick's testimony established that only he and Ms. Robinson had access to Brach's former computer following the IRC contract termination.  *Id.* ¶ 24.  Robinson testified that she observed that files that she had previously seen on the computer disappeared and that she had not deleted them.  **Robinson Dep. at 39:12-40:12.**

This is evidence that Brach remotely accessed the computer surreptitiously through his unauthorized installation of TeamViewer and deleted files from the computer.

Last, with regard to Brach's claims that CKC has not suffered damages, CKC has produced evidence showing that, as a result of Brach's actions, CKC incurred costs to retain a forensic expert to examine its computer equipment, as well as replaced computer equipment that was sequestered as a result of Brach's unauthorized access and this litigation. **CKC Exh. 113; Stanley Decl., ¶¶ 7-9 and Exh. B.**

### C.  Brach's Motion For Summary Judgment On Count III Must Be Denied.

CKC's motion for summary judgment (ECF No. 101, at 29-31) has demonstrated that there are no genuine issues of material fact regarding Count III of the Counterclaim, and that CKC is entitled to a determination that Brach is liable as a matter of law.  CKC incorporates those arguments by reference here, which necessarily preclude summary judgment in Brach's favor.  However, CKC will briefly discuss why Brach's arguments are without merit.

As a fundamental matter, Brach continues to mischaracterize CKC's claim.  In his motion to dismiss the Counterclaim (ECF No. 46), Brach argued that the constructive fraud claim was based on Brach's promise that Trippodo would be qualified to perform services in Germany in the future, and therefore could not support a claim for fraud.  That argument was rejected by the Court.  Nevertheless, in his motion for summary judgment, Brach reiterates that CKC's constructive fraud claim is an attempt "to hold Brach liable for an unfulfilled representation by Trippodo that he would be able to obtain a security clearance and perform on the contract [in the future]."  Pl.'s Mem. at 20.

As alleged in the Counterclaim and demonstrated in its motion for summary judgment, CKC's claim for constructive fraud is not based on a promise of future events.  CKC asserts not

only that Brach affirmatively misrepresented the present, material fact that Trippodo's clearance was "clean," but also that he *concealed* the material fact that Trippodo's JPAS security history had been flagged for prior issues that remained unresolved as of the time he was offered employment and sent to Germany.  ECF No. 32, ¶¶ 14, 17; ECF No. 101 at 11-14, ¶¶ 31(a)-(g). Brach had an affirmative duty to disclose the status of Trippodo's flagged clearance to CKC because he had superior knowledge of that fact, and because he had made a partial and incomplete—and therefore materially inaccurate—statement when he told Stanley that Trippodo's clearance was "clean."  *Id.*  These facts establish a prima facie case for constructive fraud under Virginia law.  *See Diaz Vicente v. Obenauer*, 736 F. Supp. 679, 690 (E.D. Va. 1990, *citing Allen Realty Corp. v. Holbert,* 227 Va. 441, 450 (1984) (concealment of material facts is actionable under Virginia law); *Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F. Supp. 2d 852, 871 (E.D. Va. 2009), *citing Cohn v. Knowledge Connections, Inc.,* 266 Va. 362, 369 (2003) (concealment of a material fact constitutes constructive fraud when the concealing party had a duty to disclose); *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999) (there is a duty to disclose when (i) a party has superior knowledge of a fact and knows the other is acting upon the assumption that the fact does not exist, or (ii) if a party makes a partial disclosure).

### 1.     Brach Cannot Support His Claim That He Was Unaware Trippodo Would Be Ineligible To Perform The Contract.

Brach asserts that he was unaware that Trippodo would be unable to perform on the contract in Germany.  However, this after-the-fact denial is wholly unsupported by the undisputed material facts.  For example, Brach claims he believed Trippodo's clearance issues had been cleared up because the Navy was sponsoring his application for a new clearance. However, it is clear that he had no reasonable basis to believe this because Trippodo clearly told

15

him that the resolution was pending, not completed, and expressed his concern that the issue would not be resolved in time.  Therefore, Trippodo was "troubled" about what to tell the Army. DMF ¶ 10.  Further, Brach understood that Trippodo was applying for a new clearance, and that it was not certain that he would receive one.  DMF ¶ 11.  In direct contradiction to Brach's current characterization of the evidence, Stanley testified that he in fact did ask Brach whether there were any areas of concern in Trippodo's background, to which Brach responded that it was "absolutely clean."  DMF ¶ 12.  And, after Trippodo was excluded from the contract, Brach admitted to Stanley that he had thought things were "all going to work out," thereby admitting his knowledge of information that, if it did not "work out," would affect Trippodo's ability to perform.  DMF ¶ 13.

The evidence shows that from the very beginning of CKC's consideration of Trippodo for employment on the Army contract in Germany, Trippodo confided in Brach that he was concerned his security background issues would preclude his eligibility to work on the contract, *and* that such an outcome would reflect negatively on Brach, who was also his personal friend. **CKC Exh. 50.**  Implicit in that communication was a tacit understanding between the two that the information was not going to be shared with CKC.  The existence of that understanding was reaffirmed on two subsequent occasions.  The first was Trippodo's May 20, 2015 email, in which he again expressed that he was "troubled" by the unresolved nature of his clearance issue and sought guidance from Brach as to how to proceed.  **CKC Exh. 57.**  The second was Trippodo's July 28, 2015 email, when after the clearance issue finally surfaced in Germany and the Army determined that his performance under the contract was a "non-starter" (**CKC Exh. 60**), he asked Brach: "How can I shield you? What can I say or claim that helps you out?" (**CKC Exh. 61**).

These facts absolutely foreclose any possibility that Brach could have reasonably believed that Trippodo's issues were cleared up and therefore did not need to be disclosed to CKC.

### 2. Brach Has No Evidence Whatsoever To Support The Assertion That Trippodo Told CKC His Clearance Was Flagged.

Brach also argues that he is entitled to summary judgment because Trippodo "kept CKC apprised of the status of his security clearance investigation," and alternatively because CKC failed to conduct its own sufficient investigation of Trippodo's qualifications. These arguments fail for two obvious reasons.

First, it is undisputed that Trippodo never told CKC that his clearance was flagged. Trippodo's declaration states that he "kept CKC apprised of the status of his security clearance investigation." But this says nothing about the substance of his communications, and specifically omits any statement that he told CKC what he told Brach: that his clearance was flagged, jeopardizing his ability to work on the Germany contract. Accordingly, that statement offers no support that Trippodo gave CKC any indication that his clearance was flagged, and CKC has otherwise denied receiving any such information from Trippodo. Further, the inference is inescapable that his declaration—signed shortly after Trippodo was discharged and the IRC contract was terminated—is in furtherance of his July 28, 2015, offer: "How can I shield you? What can I say *or claim* that helps you out?" (Emphasis added). **CKC Exh. 61**.

Second, CKC did not undertake a rigorous investigation of Trippodo's background precisely because Brach personally vouched for his friend and affirmatively stated to Stanley that his background was "absolutely clean." **Stanley Dep. at 81:5-20.** This fact is but one reason why Brach had a legal duty to disclose his knowledge about Trippodo's flagged clearance. *Bank of Montreal*, *supra*.

### 3.        CKC Was Clearly Damaged By Brach's Constructive Fraud.

Brach's argument that CKC suffered no damages as a result of his constructive fraud completely ignores the fact that CKC spent significant funds hiring, training, and flying Trippodo to Germany in reliance on Brach's concealment.  CKC would not have spent this money if Brach had disclosed that Trippodo's clearance was flagged, and instead would have hired a qualified candidate for the position.  **Brach Dep. at 205:3-206:21; CKC Exhs. 50, 57, 60.**

### 4.        The Duty To Mitigate Damages Does Not Obligate CKC To Sue Trippodo Before Asserting A Claim Against Brach.

Brach's final argument is that CKC failed to mitigate its damages where it did not seek to enforce a contractual right to obtain reimbursement from Trippodo before bringing this action against Brach.[3]  This argument has no merit whatsoever.

The Virginia Supreme Court has long recognized the obligation of an injured party to mitigate damages.  *Rehbein v. CitiMortgage, Inc.*, 937 F. Supp. 2d 753, 764–65 (E.D. Va. 2013).  However, that obligation imposes on an injured party only the duty "to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage."  *Lawrence v. Wirth*, 226 Va. 408, 412 (1983).  It is affirmative defense that must be proven by a preponderance of the evidence.  *SNC-Lavalin Am., Inc. v. Alliant Techsystems, Inc.*, 858 F. Supp. 2d 620, 633 (W.D. Va. 2012).  Unlike most affirmative defenses, mitigation of damages is not a defense that, if proven, constitutes an absolute bar to the plaintiff's claim; rather, it is a defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has been found.  *Id*. (citing *Monahan v. Obici Med. Mgmt. Servs., Inc.,* 271 Va. 621 (2006)).

---

[3]        Notably, Brach's argument relies on Stanley's deposition testimony, in which he stated that he "believe[d]" CKC's contract with Trippodo entitled CKC to seek reimbursement of expenses, and fails to cite any actual contractual language entitling CKC to reimbursement.

Here, as Brach concedes, CKC did mitigate its damages; namely, it immediately acted to replace Trippodo with another qualified individual based in Germany who was able to perform all of the tasks required by the contract.  As a result, CKC prevented the loss of its contract for default, which would have resulted in significantly higher damages.

What Brach is actually claiming here is that CKC should have sued Trippodo instead of or before it sued him.  However, that is beyond the scope of what the duty to mitigate requires. The duty does not require a plaintiff to incur additional cost, risk, or burden, such as would be required by the initiation of a lawsuit.  *See Kanawha-Gauley Coal & Coke Co. v. Pittston Minerals Grp., Inc.*, No. 2:09-CV-01278, 2011 WL 3022239, at *14 (S.D.W. Va. July 22, 2011) (the duty to mitigate did not require a plaintiff to institute a separate, and likely costly, legal proceeding against its defendant tenant to enforce a landlord's lien).  Furthermore, under Virginia law, CKC has the absolute right to bring an action against any party that caused it to be injured as it chooses.  Va. Code § 8.01–443 ("A judgment against one of several joint wrongdoers shall not bar the prosecution of an action against any or all the others, but the injured party may bring separate actions against the wrongdoers and proceed to judgment in each…."); *accord Hogan v. Miller*, 156 Va. 166, 172 (1931) ("Co-trespassers are jointly and severally liable, and the party injured may sue all of them jointly, or two or more of them jointly, or one of them severally, as he may see proper.") (internal citations omitted).  In this case, CKC's decision not to bring an action against Trippodo does not bar or otherwise limit its ability to recover from Brach.

## V.      CONCLUSION

For these reasons, Brach's motion must be denied.

Respectfully submitted,

CONFLICT KINETICS CORPORATION

By Counsel

_____/s/  Russell J. Gaspar_____
Russell J. Gaspar, Va. Bar No. 15020
rgaspar@cohenmohr.com
Andrew K. Wible, Va. Bar No. 78168
awible@cohenmohr.com
Victor G. Klingelhofer, Va. Bar No. 22609
vklingelhofer@cohenmohr.com

COHEN MOHR LLP
1055 Thomas Jefferson St., N.W., Suite 504
Washington, D.C.  20007
Telephone:  (202) 342-2550
Facsimile:  (202) 342-6147

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2017, the foregoing Memorandum in Opposition to the Motion for Summary Judgment, with attachments, was electronically filed with the Clerk of the Court for the United States District Court for the Eastern District of Virginia and served on all parties of record through the CM/ECF system.

I further certify that a true copy of the foregoing Motion and supporting documents was also served by electronic mail on the following counsel of record for the plaintiff:

R. Scott Oswald
SOswald@employmentlawgroup.com
Nicholas Woodfield
nwoodfield@employmentlawgroup.com
Kellee Boulais Kruse
kkruse@employmentlawgroup.com
The Employment Law Group
888 17th Street, N.W., Suite 900
Washington, D.C.  20006

_____/s/  Russell J. Gaspar_____